No. 13862

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

WENZEL HARTL,

       Claimant and Respondent,

  -vs-

BIG SKY OF MONTANA, INC., Employer,

    and

COMMERCIAL UNION ASSURANCE COMPANY,

       Defendant-Insurer and Appellant,

    and

TRAVELERS INSURANCE COMPANY,

       Defendant-Insurer and Respondent.

---

Appeal from: Workers' Compensation Court
          Hon. William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Berg, Angel, Andriolo and Morgan, Bozeman, Montana
        Charles Angel argued, Bozeman, Montana

    For Respondents:

        Morrow, Nash an Sedivy, Bozeman, Montana
        Edmund Sedivy, Jr. argued, (Hartl) Bozeman, Montana
        Marra, Wenz, Iwen and Johnson, Great Falls, Montana
        Charles Johnson argued, Travelers Ins., Great Falls, Montana

---

              Submitted: April 28, 1978

              Decided: June 13, 1978

Filed: June 13, 1978

_Thomas J. Kearney_
                   Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Commercial Union Assurance Company appeals from the findings and conclusions of the Workers' Compensation Court. The Court found claimnant Wenzel Hartl entitled to disability benefits from Commercial Union, imposed a 10 percent penalty, and awarded attorney fees to claimant.

Claimant was injured Friday, April 4, 1975, when he slipped and fell on ice and snow while working for Big Sky of Montana, Inc. Claimant's son Jay Hartl and another worker were with claimant and witnessed the accident. Claimant worked the rest of his shift with considerable discomfort. He did not tell his supervisor, Lehri Evanson, about the accident, but Evanson testified he heard about the accident that day.

Claimant's wife called Dr. Frank W. Humberger the next day. Dr. Humberger recommended bed rest and valium for the discomfort. Claimant did not work the next week and had difficulty even getting out of bed.

On the Monday following the accident, claimant's wife phoned Lehri Evanson and discussed the accident with him. That week, claimant's son Jay prepared a written report of the accident on a form provided by Big Sky. Jay did not sign the form but he delivered it to the employer. Jay also testified that he discussed the details of the accident with John McCullough (Evanson's supervisor) and Gus Raaum, the president of Big Sky. Evanson, McCullough, and Raaum all visited claimant in the hospital.

Claimant's condition did not improve, so he was taken to the hospital and surgery was performed by Dr. Humberger. The surgery consisted of a wide decompressive laminectomy at two levels with a fusion involving the L4-L5 and the L5-S1 areas.

Claimant recuperated in the hospital and later at home. He was able to return to work September 11, 1975, with the understanding that he would act only in a supervisory capacity and not do any bending or lifting. He found that he could not do the physicial work that was expected, and he was terminated by Big Sky in March 1976. The stated reason for the termination was a "reduction in the work force". He has since moved to Idaho and is employed doing light mechanical work at a reduced wage.

Claimant had other back injuries prior to the April 4, 1975 accident. On May 3, 1973, claimant suffered a ruptured disk in the lumbar area of his back. Dr. Humberger performed a successful laminectomy on the L4-L5 left side area, and claimant returned to work with instructions to avoid lifting, twisting, or bending. He injured the same area again in May 1974, and he again required surgery very similar to his initial operation. Dr. Humberger saw claimant again July 29, 1974, and he reported that claimant was healing properly. Claimant was working about ten hours per day with minimal lifting, twisting or bending.

Travelers Insurance Company was the insurer for Big Sky up to December 31, 1974. Since that time, Commercial Union has been the insurer.

Soon after the April 4, 1975 accident, representatives of Big Sky informed Mr. Fitzgerald, an agent for Commercial Union, that there were going to be hospital bills as the result of an injury to an employee, Wenzel Hartl. Fitzgerald assumed that this this related to an accident that occurred when Travelers was the insurer, so he referred the bills to Travelers. Travelers paid weekly benefits from April 4, 1975 through September 9, 1975.

Claimant filed a claim for compensation with the Workers' Compensation Division in February 1976. Commercial Union denied the claim on the basis that there was no record of the injury in

the employer's files.  A hearing was requested before the Workers'
Compensation Court.  Such hearing was held October 26, 1976.

The Workers' Compensation Court entered its findings and
conclusions April 8, 1977.  The Court found Commercial Union solely
liable for the payment of partial disability benefits, and ordered
Commercial Union to reimburse Travelers for the amount Travelers
had paid.  The award was increased by 10 percent pursuant to sec-
tion 92-849, R.C.M. 1947, and attorney fees were awarded under the
provisions of section 92-616, R.C.M. 1947.

Two issues are presented to this Court for review:

1.  Whether claimant complied with the notice require-
ments contained in section 92-807, R.C.M. 1947, to entitle him to
compensation; and

2.  Whether the Court erred in refusing to apportion the
liability between Commercial Union and Travelers.

The first issue may be decided by reference to section
92-807, R.C.M. 1947:

> "Notice of claims for injuries other than
> death.  No claims to recover compensation
> under this act for injuries not resulting
> in death shall be maintained unless, within
> sixty (60) days after the occurrence of the
> accident which is claimed to have caused the
> injury, notice in writing stating the name
> and address of the person injured, the time
> and place where the accident occurred, and
> the nature of the injury, and signed by the
> person injured, or someone in his behalf,
> shall be served upon the employer or the
> insurer, except as otherwise provided in
> section 92-602; provided, however, that ac-
> tual knowledge of such accident and injury
> on the part of such employer or his managing
> agent or superintendent in charge of the work
> upon which the injured employee was engaged
> at the time of the injury shall be equivalent
> to such service."

Claimant contends there was substantial compliance with
the requirement of a written notice, and in any event, there is
evidence of "actual knowledge" within the meaning of the statute.

-4-

We decline to rule on the sufficiency of the written report because we find substantial evidence to support the finding of the Workers' Compensation Court of actual knowledge on the part of the persons named in the statute.

The record indicates that claimant's supervisor Evanson knew about the accident the day it happened, and later discussed the details of the accident with claimant's wife. Jay Hartl testified that he informed Evanson's supervisor and also the president of Big Sky of the accident and the injury soon thereafter. All of these officials visited claimant in the hospital.

Commercial Union concedes that these persons fall within the category of "employer or his managing agent, or superintendent" but argues that they did not have "actual knowledge" as interpreted in Maki v. Anaconda Copper Mining Co., (1930), 87 Mont. 314, 287 P. 170. In Maki, the claimant attempted to rely upon the fact that he informed the safety engineer of the employer corporation of the accident. This Court held that such "information conveyed" was insufficient proof of "actual knowledge". The point of Maki, however, was that such oral information was conveyed to an agent of the employer who was not an "employer or his managing agent or superintendent". A holding that such oral notice is sufficient would have eliminated the requirement of written notice. The Court stated:

> "Again, the record fails to show that any
> information imparted by the claimant to the
> safety engineer was communicated to the
> 'employer, managing agent, or superintendent.'
> Of course, a corporation can only have such
> actual knowledge as is possessed by its agents,
> but our statute declares, in this instance,
> the actual knowledge of what agents shall be
> deemed the knowledge of the employer." 87
> Mont. 322.

In the instant case, the information was conveyed to the agents specified in the statute, and they thereby acquired actual knowledge of the accident and the injury. Apparently, Commercial

Union's position would require that the specified agent actually witness the accident before he could be found to have actual knowledge. We see no basis in reason or precedent for such a result. We hold the statute was satisfied by the actual knowledge of the accident and injury on the part of Evanson, McCullough and Raaum.

The second issue involves Commercial Union's contention that the Workers' Compensation Court erred in refusing to apportion the loss between Commercial Union and Travelers. Commercial Union was the insurer for Big Sky at the time of claimant's last accident, but Travelers was the insurer when claimant's other back injuries occurred.

Commercial admits there is no statutory basis for apportioning loss among successive insurers under the Montana Workers' Compensation Act, but argues that other states have recognized apportionment by judicial decision. See: Tri-State Insurance Co. v. Industrial Comm'n, (1963), 151 Colo. 494, 379 P.2d 388; Fireman's Fund Indemnity Co. v. State Industrial Accident Comm'n, (1952), 39 C.2d 831, 250 P.2d 148; Colonial Insurance Co. v. Industrial Accident Comm'n, (1946), 29 C.2d 79, 172 P.2d 884. This doctrine has never been recognized in Montana, however, and we find no compelling reason to adopt it in this case. Such an issue is properly a question for the legislature.

In this state, "we are committed to the doctrine that the particular injury must be the proximate cause of the present condition for which the claimant seeks compensation * * *." Newman v. Kamp, (1962), 140 Mont. 487, 495, 374 P.2d 100. Here, the treating physician did testify that all of claimant's back injuries contributed to his present condition, and it is impossible to separate the accidents as to cause of his disability, but he also testified that the April 4, 1975, injury was a separate and dis-

-6-

tinct injury and his present impairment is greater as the result of it. Following claimant's 1974 surgery and before his April 5, 1975, accident, claimant "got along quite nicely with no significant impairment". In view of these facts, we hold the evidence supports the conclusion that the proximate cause of claimant's present disability is his injury sustained on April 4, 1975, for which Commercial Union is responsible.

The judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices